## GOODYEAR TIRE & RUBBER CO. v. INDIA TIRE & RUBBER CO.

### No. 5695.

Circuit Court of Appeals, Sixth Circuit.

July 1, 1931.

D. W. Cooper, of New York City (Ernest D. Given, of New York City, and Tolles, Hogsett & Ginn, of Cleveland, Ohio, on the brief), for appellant.

A. L. Ely, of Akron, Ohio (Ely & Barrow, of Akron, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

This case involves questions of the validity and infringement of patent No. 1,462,453, issued to W. G. Lerch, July 17, 1923, for an automobile tire construction. At the time of the application the component parts of an automobile tire were well known. They were: (1) The carcass, made up of a varying number of plies of fabric (woven or cord), covered by and impregnated with rubber, and forming the central body of the tire; (2) the cushion, a layer of softer and more pliant rubber around the periphery of the carcass and usually of about the width of the tread; (3) the breaker-strip, which, prior to Lerch, was commonly a strip of bias cut, open mesh, woven fabric located between the cushion and the tread and having various functions in transmitting and distributing blows or impacts from the tread to the carcass, and in preventing tread separation due to such impacts and to torque; and (4) the tread, which consisted of a thicker and harder layer of rubber around the outside periphery of the tire. Lerch claimed to have been the first to use breaker-strips of the also well-known "cord" fabric, laid with the cords "arranged diagonally with respect to the plane of the tire but at right angles with respect to each other," assuming the use of two plies. Claim 2, in suit, is printed in

the margin.[1]  This claim was held valid and infringed.

Defendant below appeals.

The patent to Petersen, No. 1,152,756, September 7, 1915, shows identically the same general elements of construction as are disclosed by Lerch, viz., carcass, cushion, cord breaker-strip, and tread, but is said to be distinguished from the patent in suit in that the preferred form of Petersen has the cords located at right angles to the circumferential plane of the tire.  However, Petersen says in his specification: "Moreover, this invention is regarded, and understood to be, broad enough to include any arrangement of the elements 5 (the breaker-strip) so long as they extend more in a transverse than a longitudinal direction."

The patent to Hopkinson, No. 1,374,505, April 12, 1921, for a method of making motor vehicle tires, also discloses the use of cord fabric between the cushion and the tread, "the threads of these plies being spaced apart and serving as the 'breaker' strips." He also directs that the threads of his breaker strips be laid "at angles of 44°, 43½°, 42°, and 41½° to the axis respectively," but here also is said to be a distinguishing feature in that the breaker strips are shown as extending from the bead on one side entirely around the carcass to the bead on the other side. And yet Hopkinson says that "instead of the breaker strips here referred to, the ordinary square woven bias-cut fabric may be used and the width of these breaker strips may be varied as desired." To meet this it is contended that the use of a narrow cord breaker strip was not in contemplation, and that variation from the preferred form shown was not intended to be of any such substantial proportions. Other patents are referred to, such as those to Palmer, No. 924,186 (1909), and to Dunlap, No. 534,867 (1895), and the patents cited during prosecution of the application, but the disclosures in the patents to Petersen and Hopkinson are the closest references.

Two prior uses are also relied upon as establishing invalidity. In 1917 Goodyear was experimenting with the use of a cord fabric breaker-strip. Tires were manufactured and records of mileage kept. In these experiments Goodyear used the ordinary cord fabric which the patent in suit designates as appropriate for use in the patented structure, and the cords were also placed diagonally to the circumferential plane of the tire and to each other where two plies were used. The results were unsatisfactory. This is now said to have been due to the very use of the "ordinary cord fabric" and the too close positioning of the parallel cords in such fabric. It is urged that "the appellant ascertained in 1917 what the appellee did not discover until some years later, namely, that ordinary cord fabric is *not* the thing to use in a breaker strip." Be this as it may, we do not consider it necessary to pass upon the issue of whether this use was simply an abandoned experiment, or an anticipation.

The second asserted prior use is that in connection with the manufacture of the Palmer-Goodrich tires from as early as 1905. In the construction of these tires cord fabric was used for the breaker-strips, and it was placed on the diagonal. Apart from the appellee's contention of insufficiency of proof of this use, it would seem from the Palmer patent, No. 924,572, that the so-called breaker-strips of these tires were intended to function solely as stricture bands to prevent circumferential expansion of the tire, and that there are even more persuasive reasons for considering the Palmer-Goodrich use as an abandoned experiment than was that of Goodyear. This issue also may be passed without decision.

Whether or not the Petersen and Hopkinson patents are to be considered as anticipations, or whether the Goodyear and the Palmer-Goodrich uses are properly classified as abandoned experiments, all serve to show that the idea of the desirability of using cord fabric in the construction of the breaker strip did not originate with Lerch, and that the open mesh woven fabric was not exclusively used for that purpose. It is well established that where others were unsuccessfully striving in the same direction (here involving a substitution of materials), invention may be disclosed in arriving at that combination or precise arrangement which replaces failure with success and converts inutility into a high degree of commercial utility; but in every such case the element of invention must consist in the particular form,

---

[1] 2. A tire construction comprising, a carcass composed of a plurality of layers of rubberized fabric, a layer of rubber of a character to constitute a cushion over the carcass, a layer of tread rubber over the cushion, and two layers of parallel cords 7 and 8 interposed between the tread and the cushion, said cord layers being arranged as shown and described with the cords in oppositely arranged diagonal positions with respect to the central plane of the tire, whereby the functions of a breaker strip are performed by the layers of cords without frictional engagement of the cords with one another, without loss of traction between the tread and the carcass, and without restriction of the circumferential contraction or expansion of the tire.

shape, arrangement, and relation of the old elements. The patentee is entitled to but a narrow range of equivalents, to that combination which is only specifically claimed. Here, the crowded condition of the patent art, the closely analogous uses by others (even if they be not regarded as anticipations), the nature of the disclosure, the very essence of the alleged inventive step, and the Patent Office proceedings, involving a possible estoppel, all limit the appellee to a breaker-strip of layers of parallel cords "interposed between the tread and the cushion," as provided in the claim and under principles more fully discussed in our opinion in Directoplate Corp v. Donaldson Lithographing Co., 51 F.(2d) 199, this day decided.

So considered, the defendant's structure does not infringe. While cord fabric is used in the construction of defendant's tires, such fabric is not the "ordinary cord fabric" and it is not used as the conventional breaker-strip. The cords are widely spaced and the two layers are buried in, and separated by substantial parts of, the cushion. In a way, therefore, the defendant's cord fabric serves a different function, that of providing reinforcement and body to the cushion, and it is not clear that all the functions of the ordinary breaker-strip are performed by the defendant's form. But it is clear, in any event, that the claim does not read upon tires so constructed. There the breaker-strip is not located "between the cushion and the tread," if, in truth, a breaker-strip can be said to be used.

The decree of the court below is reversed, and the cause is remanded with instructions to dismiss the bill on the ground of noninfringement.